**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| **GINS GEORGII,** <br> **Petitioner,** <br> **v.** <br> **PAMELA BONDI, *et al.*,** <br> **Respondents.** | **Case No. 2:26-cv-13** |

**REPORT AND RECOMMENDATIONS**

Before the Court is Petitioner Gins Georgii's Emergency Motion to Enforce Habeas Order ("Motion"), filed on May 12, 2026. ECF No. 24. This matter was referred to the undersigned United States Magistrate Judge ("undersigned") for a report and recommendation pursuant to a referral order from the United States District Judge. ECF No. 25. For the following reasons, the undersigned **RECOMMENDS** the Motion be **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural Background

Petitioner has been held in immigration detention since July 21, 2024, for over twenty-four months. ECF No. 1 at 1. On May 1, 2026, the United States District Judge issued an order (the "Final Order") holding that Petitioner's prolonged detention without an individualized bond hearing had become constitutionally unreasonable.[1] ECF No. 21 at 18. The Final Order instructed

[1] The undersigned issued a Report and Recommendation ("R&R") on February 13, 2026, finding that Petitioner was subject to mandatory detention after the Board of Immigration Appeals ("BIA") issued a final removal order. ECF No. 16. The United States District Judge rejected the R&R in part, because Petitioner appealed his final removal order to the Fourth Circuit, and the Fourth Circuit granted Petitioner a stay of removal while they considered his appeal. *Id.* at 8, 18. Because the Immigration and Customs

Respondents to provide Petitioner with a bond hearing within seven days or release him immediately. *Id.* On May 8, 2026, the immigration court held a bond hearing for Petitioner. ECF No. 23 at 1. The Immigration Judge ("IJ") denied Petitioner bond after determining he was a flight risk. *Id.*

On May 11, 2026, Petitioner filed this Motion, arguing his bond hearing violated his due process rights. ECF No. 24 at 1. Respondents filed a memorandum in opposition on May 26, 2026. ECF No. 27. Petitioner filed his reply on June 17, 2026. ECF No. 30.

**B. Immigration Judge's Oral Bond Decision**

At the bond hearing, the IJ concluded that Petitioner did not pose a danger to the community.[2] ECF No. 24 at 10. However, the IJ concluded that he presented a risk of flight and a risk of non-compliance with the immigration court's orders. *Id.* In making his decision, the IJ first relied on the fact that the BIA denied Petitioner's appeal of his asylum application to conclude Petitioner was unlikely to succeed on his appeal to the Fourth Circuit and therefore has an incentive not to comply with an order of removal. ECF No. 24 at 14.

Second, the IJ found that Petitioner's lengthy detention had prevented him from establishing any ties to a community within the United States. *Id.* at 11. Although Petitioner's wife resides in California, she is not a citizen, and her removal hearing is not scheduled until 2029. *Id.* Petitioner's brother is likewise in removal proceedings. *Id.* The IJ further rejected Petitioner's proposed housing sponsor, Andrey Teslenko, who would serve on behalf of the sponsoring

---

Enforcement cannot remove Petitioner until the Fourth Circuit decides Petitioner's appeal, and only if they deny relief, the United States District Judge held his detention is constitutionally unreasonable absent a bond hearing. *Id.* at 18.

[2] Petitioner provided an unofficial "transcript" of the IJ's bond decision along with his motion. ECF No. 24 at 10–14. Respondents agree that Petitioner's transcript is a materially accurate transcription of the audio file of the hearing. ECF No. 27 at 3 n.1. Additionally, Respondents provided the Court with the audio file and the Court agrees that Petitioner's transcript is accurate for all material purposes.

organization, Russian America for Democracy in Russia ("RADR"). *Id.* at 11–12. The IJ expressed concern that given RADR's ideological and political belief, they would have incentive to assist Petitioner in defying a final order of removal. *Id.* at 12. The IJ also relied on RADR's tax records, which showed approximately $300,000 in revenue against $295,000 in expenses to conclude that RADR would not actually have the resources to assist Petitioner. *Id.*

Third, the IJ relied on a 1997 finding by the Department of Justice ("DOJ") Inspector General ("DOJ") "that when aliens are released from custody, nearly 90% [] abscond[]" and "are not removed from the United States." *Id.* at 13. The IJ referenced a recent Fifth Circuit case where the opinion cited this statistic to state that noncitizens are absconding on an even larger scale in 2026. *Id.*; *see Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). The IJ also found that Petitioner would be "motivated" to defy a final order of removal based on statements in his I-589 and asylum hearing suggesting that he hoped to avoid being removed back to Russia. *Id.* The IJ assumed the Fourth Circuit would deny Petitioner's appeal and expressed concern that he would defy the removal order, relocate to California with his wife, and remain in the country illegally to avoid being deported to Russia. *Id.*

During the hearing, the IJ noted that "there's no evidence that [Petitioner] has attempted to flee prosecution or otherwise escape authorities in the United States, and instead, he did comply with the CBP One app and sought an appointment . . . ." *Id.* Nonetheless, the IJ denied bond after determining Petitioner has "every incentive to avoid complying with a removal order." *Id.* at 14.

## II. ANALYSIS

Petitioner argues his May 8, 2026, bond hearing was not constitutionality adequate because the IJ improperly relied on (1) speculative future conduct, (2) Petitioner's family immigration status, (3) the sponsor's political and ideological assumptions, (4) generalized statistics, and (5) an

improper prediction of the pending federal proceedings. ECF No. 24 at 4–6. Petitioner argues the IJ's reliance on these considerations violates his due process rights. *Id.* at 4. In response, Respondents argue that this court lacks jurisdiction to review the IJ's decision, and regardless, the Petitioner's bond hearing comported with due process requirements. ECF No. 27 at 7–15.

**A. The Court has Jurisdiction to Review the Constitutionality of Petitioner's Hearing.**

Respondents argue that two different statutory provisions preclude this Court from reviewing bond determinations made by an IJ. First, Respondents argue that 8 U.S.C. § 1226(e) bars this Court's review of bond determinations by an IJ. ECF No. 27 at 7–10 (citing *Miranda v. Garland*, 34 F.4th 338, 347 (4th Cir. 2022)). In his reply, Petitioner argues he is not seeking review of the IJ's bond determination, but rather, enforcement of this Court's Order and determination of whether the bond hearing complied with due process requirements. ECF No. 30 at 1.

8 U.S.C. § 1226(e) prohibits courts from reviewing the Attorney General's discretionary decisions regarding detention and release, including the denial of bond. Section 1226(e) provides:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

Applying § 1226(e), the Fourth Circuit distinguished between challenges to the outcome of discretionary bond determinations and challenges to the constitutionality of bond hearings. *Miranda*, 34 F.4th at 347 (holding that while "the Attorney General's decision to adopt procedures placing the burden of proof on aliens detained under § 1226(a) may very well be discretionary, a constitutional challenge to its categorical, across-the-board nature, as opposed to the application of § 1226 to specific cases, is beyond the scope of § 1226(e)."). The Fourth Circuit held that § 1226(e) does not bar review of a constitutional challenge to the procedures adopted by the Attorney General for all detention decisions. *Id.* at 353. Applying *Miranda*, courts in the Eastern District

of Virginia have held that § 1226(e) does not bar the court from considering whether an immigration court bond hearing comports with due process. *See e.g.*, *Segura v. Bondi*, No. 1:26cv304, 2026 WL 688862, at *4 (E.D. Va. Mar. 11, 2026) (holding that "§ 1226(e) does not bar judicial review where a noncitizen asserts that the factors an [IJ] employed in denying his request for release on bond failed to comport with due process"); *Romero Lopez v. Blanche*, No. 1:26-cv-938, 2026 WL 1458901, at *2 (E.D. Va. May 21, 2026) (concluding that the court "retains jurisdiction to review whether Respondents provided Petitioner with a constitutionally compliant bond hearing").

Here, Petitioner is challenging whether the bond hearing itself complied with the constitutional requirements imposed by this Court's Order granting Petitioner habeas relief. The Court is not reviewing the IJ's discretionary weighing of evidence or ultimate bond determination. Like in *Segura* and *Romero Lopez*, this Court is considering whether an IJ's reliance on certain factors in a bond hearing complies with due process. Because Petitioner challenges the constitutionality of his bond hearing, § 1226(e) does not prevent the Court from reviewing it.

Second, Respondents argue that 8 U.S.C. § 1252(a)(2)(B)(ii) prevents the Court's review of the IJ's bond determination. ECF No. 27 at 10 n.6. Section 1252(a)(2)(B)(ii) prohibits courts from reviewing any "decision or action" of "the Attorney General or the Secretary of the Homeland Security the authority for which is specified under this subchapter to be in [their] discretion[.]" However, in *Miranda*, the court also held that § 1252(a)(2)(B)(ii) does not prevent the Court from reviewing the constitutionality of procedures used in bond hearings. 34 F.4th at 353 n.6. So long as the "claim is limited to whether the [IJ's] decision comports with due process, [] federal immigration officials do not have discretion as to whether to comply with the Fifth Amendment in denying a noncitizen's request for release on bond." *Segura*, 2026 WL 688862, at *5.

As explained, in this case, Petitioner challenges the constitutional adequacy of the process employed and does not ask for this Court to substitute the IJ's judgment on whether Petitioner is a flight risk and whether bond should have been granted. ECF No. 24 at 4. Because the constitutionality of Petitioner's bond hearing is not a matter of agency discretion, § 1252(a)(2)(B)(ii) does not bar this Court's review.

**B. Petitioner's Bond Hearing Was Constitutionally Inadequate.**

Turning to the merits of Petitioner's motion, Petitioner argues that his bond hearing was constitutionally inadequate because the IJ relied on: (1) speculative future conduct rather than individualized evidence; (2) family immigration status; (3) political and ideological assumptions regarding Petitioner's sponsor; (4) generalized statistics rather than individualized findings; and (5) predictions of the pending Fourth Circuit Court of Appeals proceedings. ECF No. 24 at 4–6. In response, Respondents argue that Petitioner's bond hearing was constitutionally adequate, and the reasons the IJ relied on for denying Petitioner bond were proper. ECF No. 27 at 10–15.

"[T]he procedures used by federal immigration officials to deny a noncitizen's request for release on bond must always comply with fundamental principles of due process." *Lucas Juarez v. Perry*, 2026 WL 1419122, at *2 (E.D. Va. May, 20, 2026) (citing *Miranda*, 34 F.4th at 359). Courts have found due process violations where the IJ's determination rested on generalized findings untethered to the individual noncitizen's circumstances, or on speculation rather than evidence in the record. *See Segura*, 2026 WL 688862, at *6; *Rosales v. Simon*, No. 1:26-cv-86, 2026 WL 688858, at *5 (E.D. Va. Mar. 11, 2026).

In finding a due process violation where an IJ relied on generalized findings, the *Segura* court held that "an individual's bond hearing fails to comport with due process where an [IJ] relies on considerations that would lead to an automatic denial of bond in all cases." 2026 WL 688862,

at *6 (quoting *Argueta-Portillo v. Bondi, et al.*, 1:26-cv-122, Dkt. No. 16 (E.D. Va. Mar. 2, 2026)). For example, an IJ may not rely on a noncitizen's unlawful status or unlawful employment because it would lead to an automatic denial of bond. *Id.* If an IJ were allowed to consider such evidence, "discretionary detention under § 1226(a) . . . would become a de facto mandatory § 1225 detention." *Id.*

Similarly, in finding a due process violation where an IJ relied on speculation, the *Rosales* court held that an IJ cannot rely on factors such as the likelihood of success of a noncitizen's pending asylum application. 2026 WL 688858, at *5. The court explained that consideration of that fact violates due process because "every individual who appears before an Immigration Judge for custody redetermination lacks lawful status." *Id.*

*1. The IJ Improperly Relied on Generalized Findings at Petitioner's Bond Hearing.*

Here, the IJ relied on generalized findings that would lead to an automatic denial of bond, violating Petitioner's due process rights. First, the IJ concluded that Petitioner would be motivated to defy a removal order based on Petitioner's statements in his I-589 and asylum hearing suggesting he hoped to avoid removal back to Russia. A noncitizen's statement describing the reasons for their desire not to return to their home country is exactly the type that would arise in *any* asylum seeker's application. An IJ relying on a statement like this would risk denying bond to all asylum seekers and becoming a "de facto mandatory" detention. *See Segura*, 2026 WL 688862, at *6; *Rosales*, 2026 WL 688858, at *6.

Second, the IJ's reliance on the 1997 DOJ finding that nearly 90% of noncitizens abscond after being released from bond is also a generalized finding that fails to justify Petitioner as an individual flight risk. An IJ could similarly use this statistic to deprive *any* noncitizen of release

on bond. By relying on generalized findings, the IJ failed to provide Petitioner with an individualized bond hearing that due process requires.

*2. The IJ Improperly Relied on Speculative Considerations at Petitioner's Bond Hearing.*

To establish Petitioner as a flight risk, first, the IJ relied on speculation that Petitioner is unlikely to obtain relief from the Fourth Circuit on his pending appeal. Like in *Rosales*, this is not an inference tethered to a recorded fact, rather it is speculation about the outcome of ongoing proceeding.[3] The Fourth Circuit appeal remains pending and its outcome is unknown.[4] Thus, the IJ's speculation about Petitioner's appeal to the Fourth Circuit was improper.

Second, the IJ speculated that the sponsoring organization would aid Petitioner in defying a final removal order. Without any statement, prior conduct, nor documented history of obstruction by RADR, the IJ relied on a speculative "concern that the sponsor is motivated by ideology and political beliefs and would have an incentive to assist [Petitioner] in defying a final order of removal." *Id.* at 11–12. The sponsor's willingness to provide housing to Petitioner while on bond cannot reasonably suggest an inference that the organization would aid Petitioner in defying a removal order. Furthermore, the IJ's conclusion that RADR's tax records demonstrate an inability to support Petitioner requires multiple unsupported inferences: financial margin determines sponsorship willingness, no other resources exist, and RADR's organizational finances

---

[3] In dicta, the Supreme Court recognized that "[a]liens who have not been ordered removed are *less likely* to abscond because they have a chance of being found admissible, while aliens who have already been ordered removed are generally inadmissible." *Johnson v. Guzman* Chavez, 594 U.S. 523, 543 (2021) (emphasis added). Here, Petitioner has been detained since his arrival to the United States and has not had a chance to demonstrate that he will comply with future orders. Even the IJ noted that Petitioner first began his immigration proceedings through the CBP One app, and "there's no evidence that [Petitioner] has attempted to flee prosecution or otherwise escape authorities in the United States[.]" ECF No. 24 at 13.

[4] *See Georgii Gins v. Blanche*, No. 26-1105 (4th Cir. 2026).

reflect its individual commitment to Petitioner. The IJ's speculation about the conduct of Petitioner's sponsor violated Petitioner's due process rights.

**C. Petitioner is Entitled to Release**

In light of a constitutionally inadequate bond hearing, the Court must consider how to address Petitioner's constitutional violation. "[D]ue process is flexible and calls for [] procedural protections as the particular situation demands.'" *Avelar Ramos v. Bondi*, 2026 WL 614876, at *7 (E.D. Va. Mar. 4, 2026) (quoting *Miranda*, 34 F.4th at 359). In large part, district courts have remedied a constitutionally deficient bond hearing by ordering a new, constitutionally compliant bond hearing before a different IJ. *See e.g.*, *Segura*, 2026 WL 688862, at *7; *Rosales*, 2026 WL 688858, at *7. However, some have found that the appropriate remedy for a constitutionally deficient bond hearing is ordering the petitioner's release. *Romero Lopez*, 2026 WL 1458901, at *4 (finding release to be the appropriate remedy where respondents failed to provide the petitioner with a constitutionally reasonable bond hearing required as a matter of due process and the court's prior order); *see also Chavarria Mejia v. Crawford*, No. 1:26-CV-253, 2026 WL 819603, at *6 (E.D. Va. Mar. 25, 2026) (ordering release and a constitutionally compliant bond hearing).

The undersigned finds that release is the appropriate remedy for Petitioner's constitutionally inadequate bond hearing. As explained in the Final Order, Petitioner's 21-month detention[5] without an individualized bond hearing was constitutionally unreasonable and violated the Due Process Clause of the Fifth Amendment to the United States Constitution. ECF No. 21 at 18. The Court ordered that Respondents provide Petitioner a bond hearing or release him

[5] Petitioner has now been detained for over 24 months. *See* ECF No. 21 at 2 (noting that Petitioner was taken into custody after presenting himself at the Calexico Port of Entry in California on July 21, 2024).

immediately under appropriate conditions of release.[6] *Id.* at 18. The IJ's bond hearing violated Petitioner's due process rights by relying on speculation and generalized findings to conclude he is a flight risk—grounds that this Court already held to be violative of due process in multiple decisions issued before the bond hearing in this case. *See Segura*, 2026 WL 688862, at *6; *Rosales*, 2026 WL 688858, at *6. Under these circumstances, the appropriate remedy for repeated due process violations is release from custody.

## III. RECOMMENDATION

For the reasons stated herein, the undersigned **RECOMMENDS** that Petitioner's Motion, ECF No. 24, be **GRANTED** and that Respondents release Petitioner under appropriate conditions of release. The undersigned further **RECOMMENDS** that Respondents be **ENJOINED** from rearresting Petitioner, unless (1) he has committed a new violation of any federal, state, or local law, (2) he has failed to attend any properly noticed immigration or court hearing, (3) the Fourth Circuit lifts its stay of removal, or (4) Petitioner violates any of the appropriate conditions of release.

## IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen (14) days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections

---

[6] Inherent in the Court's Final Order is that the bond hearing be constitutionally compliant. *Cf. Segura*, 2026 WL 688862, at *5 ("[F]ederal immigration officials do not have discretion as to whether to comply with the Fifth Amendment in denying a noncitizen's request for release on bond.").

within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Order to Petitioner and counsel of record for Respondents.

It is so **ORDERED**.

/s/
Lawrence R. Leonard
United States Magistrate Judge

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
August 4, 2026